**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICHAEL A. SODERSTRAND, PH.D., | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CIV-03-0959-F ) |
| THE STATE OF OKLAHOMA, ex rel. THE BOARD OF REGENTS OF OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES, a state agency; and SEAN ENSZ, KARL REID, PH.D., and DAVID THOMPSON, PH.D., in their individual capacities, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Three motions are before the court: "Defendants' Motion for Summary Judgment" (doc. no. 45); "Plaintiff's Motion for Partial Summary Judgment" (doc. no. 47); and "Plaintiff's Alternative Rule 56(f) Motion" (doc. no. 68). All motions have been fully briefed and are ready for determination.

### I. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return

a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## II.  Claims and Procedural Background

This action alleges that plaintiff's personal laptop computer was improperly taken from his office at Oklahoma State University (OSU). The petition[1] alleges a state law claim for conversion (first claim), and a federal claim under 42 U.S.C. §1983 for unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution (second claim).[2] The conversion claim is alleged only

---

[1] This action was removed from the District Court of Payne County, State of Oklahoma.

[2] Paragraph 24 of the petition actually alleges that the §1983 claim arises under the First and Fourteenth Amendments. When the petition summarizes plaintiff's constitutional claims in ¶35, however, it states that the federal claim alleges violation of the Fourth and Fourteenth Amendments. Defendants move for summary judgment on all claims, treating plaintiff's §1983 claim as one based on the First, Fourth and Fourteenth Amendments. (See reference to qualified immunity on federal constitutional claims brought under the First and Fourteenth Amendments at p. 32 of defendants' moving brief, and references to Fourth Amendment claims throughout defendants' brief.) Plaintiff responds with detailed arguments regarding only a Fourth Amendment claim; he makes no response at all regarding any challenges to a First or Fourteenth Amendment claim. (See, for example, plaintiff's summary of proposition I of his response brief, at p. 13, which refers only to Fourth Amendment law.) Plaintiff's *own* brief in support of summary judgment--which asks for judgment in plaintiff's favor on all claims leaving only damages for trial--mentions only a §1983 claim based on the Fourth Amendment. (The court also notes that the Joint Status Reports do not mention a First Amendment claim.) In short, plaintiff's pleadings have not been clear about the constitutional basis of his § 1983 claim and he should not be allowed to lie behind that uncertainty at this late stage;
(continued...)

against the State ex rel. the OSU Board of Regents, and the federal claim is alleged only against defendants, Reid, Thompson and Ensz, each of whom are sued in their individual capacities only.[3]  The court has previously stayed proceedings on the conversion claim so that the defendants' qualified immunity defense to the federal claim may be addressed first. (Minute order at doc. no. 64.)  Accordingly, this order deals only with the individual defendants' qualified immunity challenge to the §1983 claim.

### III.  Undisputed Facts and Background

The undisputed facts are as follows.[4]

As previously stated, the defendants to plaintiff's § 1983 claim are Mr. Ensz, and Drs. Thompson and Reid. Defendant Sean Ensz is currently employed as an IT Security Analyst at OU.  Prior to that, and at the time of the events in question in this

---

[2](...continued)
moreover, it is now clear from plaintiff's briefing that he only intends to press a Fourth Amendment claim.  Accordingly,  the court finds and concludes that plaintiff's § 1983 claim is a Fourth Amendment claim and that to the extent plaintiff may have originally intended to allege a First or a Fourteenth Amendment §1983 claim, such claims have been dropped and should be dismissed. The pleadings are hereby conformed with this order.  Alternatively, the court finds and concludes that defendants are entitled to qualified immunity with respect to any First or Fourteenth Amendment based §1983 claims.  None of the alleged conduct violates either of those Amendments, and plaintiff has not shown that any First or Fourteenth Amendment law which was allegedly violated was clearly established at the pertinent time.

[3]The second claim also alleges a violation of Art. 2, Sec. 7 of the Oklahoma Constitution, against defendants Reid, Thompson and Ensz.  If this claim purports to allege a violation of the Oklahoma Constitution through § 1983, then such a claim is hereby **DISMISSED** because to establish a claim under § 1983, a plaintiff must allege a deprivation of a federally protected right under color of state law.  Malek v. Haun, 26 F.3d 1013, 1015 (10th Cir. 1994).  If this claim intends to allege a state law claim for violation of the Oklahoma Constitution, then this order does not address that claim except to decline supplemental jurisdiction over that claim.  (See Part V.)

[4]Not all of these facts are necessarily material to the qualified immunity issues now before the court.  Some are stated merely to provide context.

action, he was employed as a Network Security Specialist for OSU's Computing Information Services (CIS) Security Office.  Mr. Ensz is one of the two CIS Security Office members who went to Dr. Soderstrand's office on July 10, 2002 and seized the laptop computer that is the subject of this lawsuit.

Defendant Karl Reid, Ph.D., is currently employed, and was employed at the time of the events in question, as the Dean of the College of Engineering, Architecture and Technology at OSU.

Defendant David Thompson, Ph.D., is currently employed, and was employed at the time of the events in question, as the Associate Dean for Instruction and Outreach of the College of Engineering, Architecture and Technology at OSU.

The events out of which this action arises began to unfold after defendants Reid and Thompson received email reports, and ultimately personal reports, from another OSU employee, regarding child pornography found by that employee in a lock box in a storage room which was part of a faculty office complex.  The reporting employee identified the owner of the box as the plaintiff in this action, Dr. Michael Soderstrand, whose private office was located next to the storage room in which the box was found. At that time, Soderstrand was employed by OSU as the Department Head of the School of Electrical and Computer Engineering.  The reporting employee met with defendants Reid and Thompson on July 9, 2002, and the box was seized later that day.

On July 10, 2002, the day after the box was seized and turned over to OSU Police Department offices, defendant Reid asked the Office of the Legal Counsel to the OSU Board of Regents whether someone should take possession of the hard drive to the desktop computer located in Soderstrand's office in order to determine if any OSU policies had been violated in the use of that computer.  Defendant Reid was advised to contact the OSU Division of Computing Information Services (CIS) Security Office for assistance in doing so.  Defendant Reid then asked Randy Mills,

the Associate Dean for the College of Engineering and a member of Dr. Reid's staff, to coordinate this effort with the CIS Security Office.

Later that same day, two members of the CIS Security Office, one of whom was defendant Ensz, took the hard drive from the OSU desktop computer located in Dr. Soderstrand's private office. At the same time, they also took possession of a laptop computer located on a table adjoining Dr. Soderstrand's desk in his office. This was done while Dr. Soderstrand was absent from his office. Dr. Soderstrand did not consent to the seizure of his laptop computer, and the laptop was taken without a search warrant.[5]

At the time the laptop computer was taken, it had been on and running; the screen showed Lotus Notes, which was the university supported email client at the time, and the screen showed various spreadsheets which appeared to contain office records. Lotus Notes is licensed by OSU and would be available for download to faculty for the purposes of checking OSU email.

After reviewing the contents of the laptop, the laptop was held and retained by the OSU police department.

## IV.  Qualified Immunity

Defendants Ensz, Thompson and Reid move for summary judgment in their favor on plaintiff's § 1983 claim, on grounds of qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To prevail on summary

---

[5]The seizure of the laptop was later quashed by Judge Robert M. Murphy, Jr., Associate District Judge for the District Court of Payne County, State of Oklahoma, acting in criminal matter CJ-2003-106. Judge Murphy's order stated that the seizure was a violation of the Fourth Amendment. That ruling is not binding on this court.

judgment against a defendant who asserts a defense of qualified immunity, a plaintiff must show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004). For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id*. Unless both prongs are satisfied, the defendant will not be required to engage in expensive and time consuming preparation to defend the suit on its merits. *Id*. Once a public official raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendants is not entitled to that immunity. Douglas v. Dobbs, 419 F.3d 1097, 1100 (10th Cir. 2005).

Defendants assert that in this case, neither of the two prongs which are required in order for plaintiffs' Fourth Amendment claim to survive the qualified immunity defense, are met. Both parties rely on O'Connor v. Ortega, 480 U.S. 709 (1987) with respect to these issues. O'Connor involved state hospital officials' search of the office of the Chief of Professional Education at Napa State Hospital, a physician and psychiatrist, while he was on administrative leave. The search included the seizure of items from the doctor's desk and file cabinets, including Valentine's Day card, a photograph and a book of poetry from a former resident physician, and billing documentation regarding one of the doctor's private patients. *Id*. at 713. During the seizure, there was no effort to separate the doctor's personal property from any state property, all of which was boxed up together. *Id*. at 713-14.

The doctor brought suit under § 1983, alleging Fourth Amendment violations. The Supreme Court explained that the reasonableness of an expectation of privacy, as well as the appropriate standard for a search, depended on the context, so that it was

"essential first to delineate the boundaries of the workplace context." *Id*. at 715. The Court then stated:

> The workplace includes those areas and items that are related to work and are generally within the employer's control. At a hospital, for example, the hallways, cafeteria, offices, desks, and file cabinets, among other areas, are all part of the workplace. These areas remain part of the workplace context even if the employee has placed personal items in them, such as a photograph placed in a desk or a letter posted on an employee bulletin board.
>
> Not everything that passes through the confines of the business address can be considered part of the workplace context, however. An employee may bring *closed* luggage to the office prior to leaving on a trip, or a handbag or briefcase each workday. While whatever expectation of privacy the employee has in the existence and the outward appearance of the luggage is affected by its presence in the workplace, the employee's expectation of privacy in the *contents* of the luggage is not affected in the same way. The appropriate standard for a workplace search does not necessarily apply to a piece of *closed* personal luggage, a handbag or a briefcase that happens to be within the employer's business address.

*Id*. at 716-17 (emphasis on "contents" in original; emphasis on "closed" luggage supplied).

The Court stated that "[g]iven the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. *Id*. at 718. The Court noted that the officials alleged that the search was either a non-investigatory work-related intrusion or an investigatory search for evidence of suspected work-related employee misfeasance. *Id.* at 723. The Court noted that public agency employers had interests in insuring that the work of the agency was conducted in a proper and efficient manner. *Id*. at 724. The Court noted that the employee could avoid exposing personal belongings at work by simply leaving them at home. *Id*. 725.

The Court concluded that a standard of reasonableness would neither unduly burden the efforts of government employers nor allow arbitrary intrusions upon the privacy of public employees. *Id*. at 725-26. The Court held, therefore, "that public employer intrusions on the constitutionally protected privacy interests of government employees for...investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id*. To determine whether that reasonableness standard was met in any given situation, the Court stated that the trial court must consider two things: whether the action was justified at its inception and whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place. *Id*. at 726.

Here, as in O'Connor, the office being searched was the office of a professional working for a public institution, and the search was to investigate work-related misconduct. In this case, the suspected misconduct involved possible child pornography stored on computers located in Dr. Soderstrand's office on campus. It is undisputed that OSU security officers entered plaintiff's OSU office and seized the hard drive of the desk top computer and plaintiff's laptop computer, and that the laptop computer was open, on and running at the time, with an OSU supported email program on the screen and with various spreadsheets that appeared to contain office records.

Applying the standards of O'Connor, and construing all facts and allegations in plaintiff's favor, the court finds and concludes that the search was justified at its inception and that its scope was reasonably related the circumstances which justified it. Thus, the undisputed evidence shows there was no conduct that violated the Fourth Amendment. Plaintiff has failed to meet the first prong of the test for a successful challenge to a qualified immunity defense, and the individual defendants are entitled to qualified immunity as a matter of law.

Out of an abundance of caution, the court briefly addresses the second prong of the qualified immunity test. That prong requires a plaintiff to show that the Fourth Amendment law which was allegedly violated is law which was clearly established at the time of the violation. Given the vagaries pointed out by the Supreme Court in O'Connor which exist when a court attempts to define the limits of the Fourth Amendment with respect to office searches, and given the relatively recent development of the law with regard to computer searches, this court concludes that any Fourth Amendment law which might render the acts alleged in the petition unconstitutional, was not clearly established at the time of the search in July of 2002.

In summary, the court finds and concludes that the individual defendants are entitled to qualified immunity, as a matter of law, with respect to plaintiff's § 1983 claim. Accordingly, defendants Ensz, Reid, and Thompson are entitled to summary judgment in their favor on the federal claim.

## V.  State Law Claims

Plaintiff's only federal claim has now been summarily adjudicated in favor of the only defendants against whom that claim was alleged. This means that no federal claims remain for determination in this action, and the court must now determine whether to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).[6]

Judicial economy, fairness, convenience, and comity are all considerations which guide a district court's decision regarding whether to defer to a state court or retain and dispose of state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966). The Tenth Circuit has held that when federal claims are resolved before trial, the district court should usually decline to exercise jurisdiction over the

---

[6]This order refers to state law claims, plural, because the petition alleges a claim for conversion and it also appears to allege a violation of the Oklahoma Constitution. *See* n.3, *infra*.

remaining state law claims and allow the plaintiff to pursue them in state court. *See*, Smith v. City of Enid By and Through Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995).

Having disposed of the federal claims prior to trial, and finding no consideration that causes the court to conclude it should retain jurisdiction over the state law claims, the court, in the exercise of its discretion, declines to exercise supplemental jurisdiction over the state law claims. Those claims will be dismissed without prejudice.

### VI.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion for summary judgment argues that the court should find, as a matter of law, that defendants violated plaintiff's Fourth Amendment rights. Determinations already made in this order obviate plaintiff's arguments regarding the merits of plaintiff's § 1983 claim, and the court rejects plaintiff's motion to the extent that it concerns that claim. This order does not reach plaintiff's arguments regarding any state law claims. Accordingly, plaintiff's motion for summary judgment should be denied.

### VII. Plaintiff's Rule 56(f) Motion

Moving under Federal Rules of Civil Procedure, Rule 56(f), plaintiff asks the court to delay ruling on defendants' qualified immunity argument until plaintiff can depose Randy Mills, who the motion states was a principal actor in the taking of plaintiff's computer. In support of the motion, plaintiff's counsel's affidavit states that "[t]hrough the course of...depositions" on October 17 and October 23, 2006, "it became clear that Randy Mills was intricately involved in the facts of this Lawsuit and that his depositions [sic] was needed." (Affidavit attached to Rule 56(f) motion, ¶ 3.) The motion states that after depositions on October 17, plaintiff's counsel asked defendants' counsel "about taking the deposition of Mills and was informed that

[Mills] was now living out of state." (Motion, p. 2.)  Plaintiff's counsel's affidavit offers this statement as one which "impl[ies] that the deposition could not be easily or quickly arranged before the date Plaintiff's response was due to this Court." (Affidavit, ¶ 3.)

This action was filed on June 19, 2003, and was removed to this court on July 16, 2003. It was stayed pending review of the correctness of Judge Tim Leonard's denial of a motion to suppress.[7] That stay was lifted on June 21, 2005. Additionally, the qualified immunity challenge was an expected one, that defense having been raised as an affirmative defense in the original answer on July 18, 2003, and having been identified by defendants in the first Joint Status Report filed in this action on August 26, 2003. In that Joint Status Report, Mr. Mills was identified as a potential witness for the defendants, who would "testify as to search and events in this case." Plaintiff was recently reminded of Mr. Mills' involvement in the seizure of the laptop computer, when defendants' motion for summary judgment was filed on August 2, 2006. Exhibit "A" to defendants' moving brief is the affidavit of Sean Ensz, in which Mr. Ensz details (in ¶¶ 4-5) Mr. Mills' role in the seizure of the laptop. This procedural history indicates that plaintiff has had ample time, even excluding the time during which this action was stayed, to find Mr. Mills and take his deposition or obtain discovery from him in another manner.

In these circumstances, the implication that a deposition might not "be easily or quickly arranged" is not a showing sufficient to postpone the court's consideration of the defendants' motion for summary judgment. A party invoking Rule 56(f) must identify the probable facts not available and what steps have been taken to obtain

---

[7]The motion sought to suppress evidence found in Dr. Soderstrand's lock box, after the box was seized on the tip discussed earlier in this order and after a search warrant was obtained for the contents of the box.  See, United States v. Soderstrand, 412 F.3d 1146 (10th Cir. 2005) (affirming denial of motion to suppress and sentence).

these facts. Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992). Plaintiff's counsel has not identified what facts are not available, nor has he identified steps he has taken to try to obtain the necessary facts.

Finally, although the court does not rely on this last point to support its ruling, the court states its belief that it is extremely unlikely that anything Mr. Mills would say could change any of the few undisputed facts relied upon by the court in reaching its conclusions stated in this order. Those facts--such as the fact that OSU seized the laptop during an investigation of workplace misconduct, the fact that the laptop was on Dr. Soderstrand's table in his OSU office when it was seized, and the fact that the computer was on and running an OSU supported email program at the time--have never been contested and are established many times over in the record.

Plaintiff has not made the showing necessary to support a delayed ruling under Rule 56(f), and plaintiff's Rule 56(f) motion will be denied.

## VI. Conclusion

After careful consideration of the pleadings, the parties' submissions, the record, and the relevant authorities, the court makes the following rulings.

Defendants' motion for summary judgment is **GRANTED**. Defendants Ensz, Reid, and Thompson are awarded summary judgment in their favor on plaintiff's federal claim alleged against them, which is a § 1983 claim alleging a violation of the Fourth Amendment of the United States Constitution. Any other federal claims which plaintiff might have originally intended to allege have been dropped and are hereby deemed voluntarily **DISMISSED**. *See* n. 2, above. Plaintiff's state law claims are **DISMISSED** by the court without prejudice, because the court declines to exercise supplemental jurisdiction over those claims.

Plaintiff's motion for partial summary judgment is **DENIED**.

Plaintiff's Rule 56(f) motion is **DENIED**.

The result of these rulings is that no claims remain pending before this court. Judgment will be entered accordingly.

Dated this 22nd day of November, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

03-0959p020(pub).wpd